*Court of Common ·Pleas, Dauphin County, February 26th, 1866.*

SHICK *v.* THE PENNSYLVANIA RAILROAD COMPANY.

The petition of a railroad company which sets forth that, having failed to agree with the owner of land as to its value, they had taken it for the necessary purpose of putting down additional tracks, and otherwise using it in the maintenance of their road, is fatally defective, and the proceeding will be set aside. Viewers appointed to assess the value of land taken by a railroad company must find in their report whether such appropriation was necessary; if they do not find it necessary, the land cannot be taken.

BY THE COURT.—The Pennsylvania Railroad·Company, being desirous of obtaining some land belonging to J. M. Shick for the use of its road, at August Term, 1864, presented its petition, setting forth that "J. M. Shick is the owner of about three acres of ground in the city of Harrisburg, upon which the said company have entered, and which it has appropriated for the necessary purpose of putting down additional tracks, *and otherwise using in the maintenance and operation of their road.*" It also recites their inability to agree about the value, and that a bond had been filed and approved by the court for the payment of damages, and asks that viewers be appointed to assess the same; which was done, the report made, and damages to the amount of $10,430 assessed in favor of Shick. To this report the latter has filed exceptions, in substance that the company has no right to take his land, the purpose for which it is required is not properly defined, and the necessity for its appropriation has not been sufficiently made out.

It is clearly established that, under the Constitution of the United States and of this State, the property of a citizen cannot be taken for mere private use nor for any public purpose without paying an equivalent. It is equally well settled that the commonwealth can grant to a corporation, created for the purpose of making a great public improvement, beneficial to the people at large, a portion of the sovereign prerogative of taking private property necessary for the successful execution of its work; but such a power is to be strictly construed, and not extended by implication beyond the words of the statute granting it. No privilege is granted unless in plain and unambiguous language, too plain to be mistaken or misunderstood (9 H. 9 and 22; 3 C. 339). Section 2 of the act incorporating this railroad company gives very extensive powers to purchase and hold real and personal property; but it is to hold no real estate, except "such as may be necessary or convenient for the making and constructing of said railroad, or for furnishing materials therefor, and for the accommodation of depots, offices, warehouses, machine-shops, toll-houses, engine and water stations, and other appropriate appurtenances, and for the persons or things employed or used in or about the same." And in section 11 it is provided that said company may "occupy all land on which the said railroad or depots, warehouses, offices, toll-

houses, engine and water stations, or other buildings or appurtenances hereinbefore mentioned, may be located, or which may be necessary or convenient for the erection of the same, or for any purpose necessary or useful in the construction, maintenance, or repair of said road."   This land may be taken without purchase, and a mode of assessing the damage for so doing, where the company and owner cannot agree, is provided by section 12, to be determined by a jury in the Court of Quarter Sessions, subsequently changed in section 4 of the act of 1848 to five viewers to be appointed by the Court of Common Pleas.   The width of the road is not to exceed four rods, except in the neighborhood of deep cuttings, high embankments, places selected for sidings, turnouts, depots, or engine and water stations.   Such are the powers, and such the restrictions thrown upon this railroad company.   The powers conferred are very broad and general, yet we cannot construe them to be *unlimited,* or to confer authority on the company to take the land of every citizen, which, it might think, it would be *convenient* for the company to have.   We are inclined to believe that the word was used to qualify "*necessary,*" which might be construed to mean an *absolute necessity,* such as could not be done without.   We think that both in this and the general railroad law the intention of the expression was to enable the company to take merely such land as would be *proper* to build the works expressly authorized to be constructed, or for their better management.   It might be very *convenient* for the company to have land on which to erect houses for its mechanics and laborers in the vicinity of its workshops expressly authorized to be built.   Yet no one, without a most latitudinarian construction, would pretend to say it could be taken against the will of the owner for such a purpose under this charter.   The petition says that the company has appropriated the three acres of land belonging to Shick, " for the necessary purpose of putting down additional tracks."   Thus far there is an object defined, which, although not in the words of the charter, is well understood to mean much the same as "*sidings,*" and the uses and necessity are well stated; but when it gives no account of what is to be done with the residue of the land, except, by saying, it is to be "otherwise used in the maintenance and operation of the road," it fails to state that the land is to be applied for any authorized purpose—any use recognized by the charter.   Consequently, the court cannot say that the taking is lawful.   This is, in our opinion, a fatal defect.   The property of the citizen cannot be taken except for a *public* purpose sanctioned by the law.   It is scarcely possible that the whole of three acres will necessarily be covered with railroad tracks, especially when of the shape set forth in the draft; and no other purpose is stated.

The necessity of taking this land has been from the first denied by the owner, and neither in the petition nor finding of the jury has it been made apparent.   Such necessity has not been shown

[Shick *v.* The Pennsylvania Railroad Company.]

on the argument, was not declared by affidavit when the petition was filed, as is decided to be proper in a matter of much less moment,—the inability to agree about the price (O'Hara *v.* The Penna. Railroad, 1 C. 445). Nor have the jury or viewers passed on that question, which, it is taken for granted in the same case, must be done. The order of court did not command them so to do, nor have they said one word about it in their report; they merely determine the value of the land taken, not the necessity, or even *convenience* of appropriating it. No evidence could properly be introduced before them on the subject, as they were not commanded to inquire in relation thereto. This is also a fatal defect. It must be borne in mind that these proceedings are entirely *ex parte.* The company filed its bond to cover the damages, and entered upon the land; no doubt endeavored to agree as to the price, but failed; and then presented its petition to have viewers appointed, which is always done without notice. The order is taken out by the petitioner in its own form, and the owner has, for the first time, notice of the view and a right to appear before the viewers. The report in this, as in all other cases, is drawn up by the counsel of the petitioners, and no mention is made as to the wants of the company in regard to the land; but the damages are very properly set forth with great particularity, as is ordered by the court in all such cases. On the return of that report the owner has, for the first time, an opportunity to contest the propriety of stripping him of his freehold for the use of the public, of showing that his land is not wanted for any purpose recognized by law, and that the company has an ample estate on which to conduct its business. We cannot presume all things to be rightly done; the company must show at some period of time the necessity for taking the land, and a full compliance with all the provisions of its charter. Even the bond filed is better calculated to mislead than enlighten the owner, as it declares that the company is about to take three acres of land, *"not including the buildings,"* for the purpose of *works connected with its road,* and the report shows that the buildings are all included. These proceedings must be set aside from the beginning, except the bond, which must stand as security for the value of the property to be taken, and damages sustained thereby, when the same shall be lawfully determined, and the necessity of the appropriation established before the viewers. The company is not to be the sole judge of what it requires; but, as is said in O'Hara *v.* The Penna. Railroad Company already cited, that important point must be determined by the tribunal appointed by the law.

*Lamberton, Alricks, and Alleman, for plaintiff.*

*Kunkel, for defendant.*